In re Gregory George HART, Debtor.

Thomas N. LESLIE, Plaintiff,

v.

Gregory George HART, Defendant.

Bankruptcy No. 90–61253.
Adv. No. 90–6162.

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

July 3, 1991.

Pat Engels, Lowell, Ind., for debtor.

Thomas Leslie, pro se.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

KENT LINDQUIST, Chief Judge.

### I

### *Statement of Proceedings*

This Adversary Proceeding came before the Court for hearing on March 26, 1991 on a Motion for Summary Judgment filed by Plaintiff, Thomas N. Leslie, (hereinafter: "Plaintiff") on December 10, 1991. The Plaintiff filed his brief in support of his motion and an affidavit by Terri Hart in support thereof on January 15, 1991.

An Objection to said Motion for Summary Judgment was filed by the Defendant–Debtor, Gregory George Hart (hereinafter: "Defendant") on January 16, 1991, together with supporting brief. The Defendant filed his affidavit in opposition to the Plaintiff's Motion for Summary Judgment on January 30, 1991.

The Plaintiff's complaint in part alleges as follows:

2. That on or about the 6th day of March, 1990, a Decree of Dissolution of Marriage with Property Settlement Agreement incorporated was entered in the Marion Superior Court, Civil Division, Room No. 2, Indianapolis, Indiana, under cause number 49D02–8901–DR–0125.

3. That said Property Settlement Agreement contains the following provision:

4.C.6. *As further support and due to the sparsity of the marital assets being set over to the Wife, and in order to balance the relative incomes of the parties in light of the fact that Wife is receiving custody of the minor child, husband shall pay Wife's attorney's fees in this cause to her Attorney Thomas N. Leslie* in the total sum (including preliminary attorney's fees) of Two Thousand Six Hundred Dollars ($2,600.00), reduced to judgement to be paid at the rate of Fifty Dollars ($50.00) per month, until paid in full, however, balance shall be paid in full twelve (12) months from the date of Decree. Said judgment shall not bear interest so long as payments are made in a timely fashion, first payment shall be due March 1 1990. (Emphasis supplied).

4. That said indebtedness has been made a part of the Schedules and Petitions of the debtor, Gregory George Hart, in the above-captioned bankruptcy.

5. That said indebtedness is not dischargeable pursuant to 11 U.S.C. § 523(a)(5).

\* \* \* \* \* \*

7. That on the 9th day of May, 1990, Debtor made one payment in the amount of $100.00 to Plaintiff of which $45.59 was applied to interest and $54.41 was applied to principal.

8. That since May 9, 1990, interest has continued to accrue on the outstanding balance of $2,545.59 at the rate of 10% per annum.

It should also be noted that Clause 4 of Property Settlement Agreement which is captioned, "Custody of the Child and Provision for Support and Maintenance", which was approved by the State Court by the Dissolution Decree, provided at Clause 4.A.1, that the Defendant's ex-spouse would have custody of the minor child of the parties, and at Clause 4.C.1, that the Defendant would pay child support at the rate of $136.00 per month.

Clause 4.C.2 expressly recited that *"Due to the fact that husband's gross income is substantially more than wife's,* as *further support,* husband shall, subject to the granting of a decree of dissolution, assume payments owed by the parties to.... Community Hospital."* Pursuant to Clauses 4.C.4 and 4.C.5 the Defendant agreed to pay for medical, dental, vision, and optical expenses not covered by insurance, and maintain $75,000.00 in life insurance with the child as beneficiary.

The provisions of the Property Settlement Agreement relating to the division of property were dealt with separately under Clause 3, captioned, "Division of Property".

The Defendant filed an answer on November 7, 1990 admitting the Plaintiff's allegation as to jurisdiction, the Marriage Dissolution, the Property Settlement Agreement, and the Scheduling of the Plaintiff as a creditor. However, the Defendant denied that the attorney's fees awarded by the State Court to the Plaintiff in the Dissolution Decree approving the Property Settlement Agreement between the Defendant and his ex-spouse Terri Lee Turner Hart (hereinafter: "Defendant's ex-spouse") is nondischargeable as being in the nature of support pursuant to § 523(a)(5).

Plaintiff appears *pro se.*

Defendant appears by counsel.

Submitted. Arguments heard.

II

*Conclusions of Law and Discussion*

A

*General Principles Relating to Summary Judgment*

No objections were made by the parties to the jurisdiction of this Court and the

Court finds this is a core proceeding pursuant to 28 U.S.C. § 157.

The granting of a motion for summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

The moving party, in making a motion for summary judgment, "has the burden of establishing the lack of a genuine issue of material fact." *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984); *Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984).

■ When ruling on a motion for summary judgment, inferences to be drawn from underlying facts contained in such materials as attached exhibits, and depositions must be viewed in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *See also, Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215 (7th Cir. 1984).

■ By entering a summary judgment for a party, the court is concluding that based on the evidence upon which the non-moving party intends to rely at trial, no reasonable jury could return a verdict for the non-moving party. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985); *Weit v. Continental Illinois National Bank & Trust Co.*, 641 F.2d 457, 461 (7th Cir.1981), *cert. den.*, 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982).

■ Once a moving party has met its initial burden, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and that the disputed fact is material. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983), *cert. den.*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Thus, if the movant carries his initial burden, the opposing party may not defeat the motion by merely relying on the contentions of its pleadings, but must produce significant probative evidence to support its position. *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20

L.Ed.2d 569 (1968); *United States v. Pent-R Books, Inc.*, 538 F.2d 519 (2nd Cir.1976), *cert. den.* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

■ In *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), the Seventh Circuit addressed exactly what a party must demonstrate to show the existence of a genuine issue of fact precluding summary judgment. The Court stated:

A genuine issue for trial only exists when there is sufficient evidence favoring the nonmovant for a jury to return a verdict for that party. As the Supreme Court has stated, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." We must not weigh the evidence. Instead, we must see if the nonmovant's evidence is sufficient. In determining whether evidence is sufficient, we must of necessity consider the substantive evidentiary standard of proof, for example, preponderance of the evidence, that would apply at a trial on the merits. In addition, we draw all inferences in favor of the nonmovant. Such inferences, however, must be "justifiable". (Citations and footnote omitted).

In reaching its determination, the Court has the power to penetrate the allegations of fact in the pleadings and look to any evidential source to determine whether there is an issue of fact to be tried. *Parmelee Transportation Co. v. Keeshin*, 292 F.2d 794 (7th Cir.1961).

■ The Seventh Circuit in *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc) *cert. den.* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), held that to preclude a summary judgment, the non-moving party must show the disputed fact to be material. That is, it must be outcome-determinative under applicable law. Thus, facts not outcome-determinative under applicable law, though in dispute, may permit the entry of a summary judgment. In *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir.1972), the Court stated that, "appellate courts should not look the

other way to ignore the existence of the genuine issues of material facts, but neither should they strain to find the existence of genuine issues where none exists." *See also, Kirk v. Home Indemnity Company,* 431 F.2d 554 (7th Cir.1970).

## B

### *Materials to be Considered on Motion for Summary Judgement*

■ Federal Rules of Civil Procedure 56(c) provides as follows:

(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* A summary judgment, interlocutory in character may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. (Emphasis added).

Thus, pursuant to Fed.R.Civ.P. 56(c) the Court may consider all papers of record as specified therein. *Federacion de Empleados Del Tribunal General de Justicia v. Torres,* 747 F.2d 35 (1st Cir.1984); *Allen v. Carlotti,* 400 F.Supp. 1037 (S.D.Fla.1975), *aff'd.,* 552 F.2d 1086 (5th Cir.1977).

The Court is obligated to consider not only materials specifically offered in support of the motion, but also all "pleadings, depositions, answers to interrogatories and admissions" properly on file and thus properly before the Court. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415. Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention; the Court must consider both before granting a summary judgment. *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406 (5th Cir.1980).

■ The material considered by the Court must be of the type that would be admissible in evidence. Federal Rule of Civil Procedure 56(e) provides in part as follows:

(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

Inasmuch as the summary judgment procedure lacks the safeguards of cross-examination of the affiant, it must be shown that he is competent to testify as to the matters stated, and the facts to which he swears are admissible in evidence. *American Securit Co. v. Hamilton Glass Co.,* 254 F.2d 889 (7th Cir.1958); *Midland Engineering Co. v. John A. Hall Constr. Co.,* 398 F.Supp. 981 (N.D.Ind.1975).

■ As a general rule affidavits of opinion or legal conclusions submitted in connection with a motion for summary judgment are totally ineffectual and are not to be given any weight whatever. *G.D. Searle & Co. v. Chas. Pfizer & Co.,* 231 F.2d 316 (7th Cir.1956) (decided prior to effective date of Fed.Rules of Evid.); *see Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627–28, 64 S.Ct. 724, 88 L.Ed. 967 (1944). Affidavits do not qualify as a basis for summary judgment, and are not competent for the purpose of negating genuine issues of material fact where matters of motive or opinion of value are involved. *Duane v. Altenburg,* 297 F.2d 515 (7th Cir.1962). Mere conclusory affidavits that an issue exists will not suffice to defeat well-grounded motions for summary judgment. *Wilson Jones Co. v. Gilbert & Bennett, Mfg. Co.,* 332 F.2d 216 (2nd Cir.1964).

■ In *Cohen v. Ayers*, 449 F.Supp. 298 (N.D.Ill.1978), *aff'd*. 596 F.2d 733 (7th Cir.1979), it was held that an affidavit may be disregarded if it contains conclusions of law or of ultimate fact, statements made on information and belief, or argument, but that if admissible facts and inadmissible statements are mingled in the same affidavit, the Court may rely on the facts and disregard the rest. The Court is free to disregard the inadmissible argument or conclusions in an affidavit of support whether or not a motion to strike is filed. *Prudential Ins. Co. v. Curt Bullock Builders, Inc.*, 626 F.Supp. 159 (N.D.Ill. 1985).

■ Supporting Memorandum, not sworn or in affidavit form making factual assertions, even if accompanied by exhibits does not meet the requirements of Rule 56(c), and cannot be relied upon by the Court as establishing a basis for summary judgment. *Macklin v. Butler*, 553 F.2d 525 (7th Cir.1977); *Smith v. Mack Trucks, Inc.*, 505 F.2d 1248 (9th Cir.1974); *Goldman v. Summerfield*, 214 F.2d 858 (D.C.Cir.1954).

The Court in ruling on the motion for summary judgment has considered the following documents that have been filed of record in addition to the briefs filed by the respective parties:

1. Complaint filed by the Plaintiff on October 25, 1990.
2. Answer filed by the Defendant on November 7, 1990.
3. Certified copy of Decree of Dissolution entered by the State Court on March 6, 1990, together with the Certified copy of the Property Settlement entered into between the Defendant and the Defendant's ex-spouse on March 6, 1990, which was approved by the State Court pursuant to the Dissolution Decree, and which incorporated the same therein by reference. (*See,* Exhibits to Plaintiff's brief in support of his Motion for Summary Judgment filed January 15, 1991).
4. Affidavit of ex-spouse of Defendant in support of Plaintiff's Motion for Summary Judgment filed January 16, 1991. The affidavit of the Defendant's ex-spouse avers that because of severe medical problems of the child she was unable to work outside the home, never did develop any job skills, had only a high school education, and brought in no income; that she received no marital assets from the marriage except a few pieces of household furniture, her clothing, and a ten (10) year old car; and, that due to the sparsity of marital assets, she intended that the Defendant pay the attorney's fees, not as a property division, but as support.
5. Affidavit of Defendant in opposition to Plaintiff's Motion for Summary Judgment filed January 30, 1991. The affidavit avers that at the time of the Separation Agreement the ex-spouse was educated and employable, in that she had worked as a billing clerk, as an assistant marketing manager for the Wholesale Club, as an aerobics instructor, had a merchant's license to make and sell craft items, and at the time of the dissolution was a secretary at the Community Hospital; and, that at no time did Defendant believe, or understand that the attorney's fees were in the nature of support, and that the Defendant had no intention to "reduce the money meant for the benefit of his child to pay Attorney Leslie's fees."

### C

### *Standard of Proof to be Applied on Motion for Summary Judgment*

■ Finally it should be noted that the Supreme Court in the case of *Anderson, et al. v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) held that in determining whether a factual dispute exists on a motion for summary judgment, the court must be guided by the substantive evidentiary standards of the case that are applicable at trial, and thus in ruling on a motion for summary judgment the Supreme Court held that the court must apply the clear and convincing standard in a case where the actual malice rule applied, and this was thus the standard of proof for such a claim. Here the standard of proof

as to the Plaintiff who is proceeding under 11 U.S.C. § 523(a)(5) is by a preponderance-of-the-evidence. *Grogan v. Garner,* — U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Thus, the court must apply the preponderance-of-the-evidence standard of proof to the Plaintiff in this adversary proceeding in testing the sufficiency of the motion for summary judgment.

### D

*Whether Attorneys' Fees Awarded to Attorney for ex-spouse of Debtor in prior State Court Dissolution Decree is a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(5)*

■ If a debtor is ordered to pay an ex-spouses' attorney fees incident to a dissolution, and the fees awarded are based upon need, such fees are usually nondischargeable as being in the nature of support. *In re Silansky,* 897 F.2d 743, 744 (4th Cir. 1990); *In re Williams,* 703 F.2d 1055, 1057 (8th Cir.1983); *In re Spong,* 661 F.2d 6, 10–11 (2nd Cir.1981); *In re Wisniewski,* 109 B.R. 926, 930 (Bankr.E.D.Wis.1990).[1]

■ Attorney fees are not always categorized as support if the award of fees merely balances a property division, and neither party requires the awarding of fees as additional support. In such a case the fees are likely to be dischargeable. *In re Wisniewski,* 109 B.R. at 930, *supra, citing,*

*In re Kijewski,* 91 B.R. 48, 50–51 (Bankr. N.D.Ill.1988), and *In re Vande Zande,* 22 B.R. 328, 330 (Bankr.W.D.Wis.1982). *See also, In re Schiltz,* 97 B.R. 671, 674 (Bankr. N.D.Ga.1986); *In re Wadleigh,* 68 B.R. 499, 501–04 (Bankr.D.Vt.1986); *In re Rice,* 94 B.R. 617, 618–20 (Bankr.W.D.Mo.1988); *In re Schmiel,* 94 B.R. 373, 379–81 (Bankr. E.D.Pa.1988); *Matter of Frey,* 13 B.R. 12, 14 (Bankr.S.D.Ind.1981).

■ As pointed out in *In re Bell,* 5 B.R. 653, 655, *supra,* "[A]ttorney fee dischargeability must rise and fall with the primary debt." *See also, In re Lafleur,* 11 B.R. 26, 29 (Bankr.D.Mass.1981). That is, whether or not a fee award is dischargeable depends on whether the debt relating to the fee is dischargeable. *In re Boggess,* 105 B.R. 470, 473 (Bankr.S.D.Ill.1989); *In re Patrick,* 106 B.R. 743, 745 (Bankr.S.D.Fla. 1989).

The Court of Appeals of the Seventh Circuit in the case of *In the Matter of Cornish,* 529 F.2d 1363 (7th Cir.1976), had an occasion to address the issue of whether attorney's fees awarded to a debtor's ex-spouse were nondischargeable as support under Section 17(a)(7) of the former Bankruptcy Act (11 U.S.C. § 35(a)(7)), the predecessor to the present § 523(a)(5). The fees in question arose out of an Illinois decree. The Illinois statute in question authorized the divorce court to make the attorney's fees payable to either the wife directly or directly to her attorney at the Court's discretion as does I.C. 31–1–11.5–16(a). The

---

1. *See also,* the following cases that have held that attorney fees awarded in a State Court dissolution decree were nondischargeable as support:

*In re McNierney,* 97 B.R. 648, 651 (Bankr. S.D.Fla.1989); *In re West,* 95 B.R. 395, 400 (Bankr.E.Va.1985); *Matter of Vazquez,* 92 B.R. 533, 534 (S.D.Fla.1985); *In re Calisoff,* 92 B.R. 346, 352–53 (Bankr.N.D.Ill.1988) on subsequent motion 92 B.R. 357. *Miskovsky v. Skinner,* 88 B.R. 360, 361 (W.D.Okla.1987); *In re Meadows,* 75 B.R. 695, 699 (Bankr.N.D.Tex.1987); *In re Grijalva,* 72 B.R. 334, 338–39 (S.D.W.Va.1987); *In re Cockhill,* 72 B.R. 339, 341–44 (Bankr. N.D.Ill.1987); *In re Heverly,* 68 B.R. 21, 23 (Bankr.M.D.Fla.1981); *In re Galpin,* 66 B.R. 127, 131 (N.D.Ga.1985); *Siegel v. Smith,* 65 B.R. 668, 669–70 (W.D.N.Y.1986); *In re Anderson,* 62 B.R. 448, 456 (Bankr.D.Minn.1986); *In re Barac,* 62 B.R. 713, 717–18 (Bankr.E.D.Mo.1985); *In re*

*Manners,* 62 B.R. 656, 658–59 (Bankr.D.Mont. 1986); *In re Tosti,* 62 B.R. 131, 132–33 (Bankr. D.N.J.1986); *In re Sigworth,* 60 B.R. 137, 138–39 (Bankr.N.D.Ohio 1986); *In re Tessler,* 44 B.R. 786, 787–88 (Bankr.S.D.Calif.1984); *In re Certo,* 33 B.R. 561, 562 (Bankr.S.D.Fla.1983); *In re Dutra,* 33 B.R. 773, 774–75 (Bankr.D.R.I.1983); *In re Gedeon,* 31 B.R. 942, 945 (Bankr.D.Colo. 1983); *In re Haast,* 27 B.R. 93, 94 (Bankr. S.D.Fla.1983); *In re Friedland,* 18 B.R. 451, 453–54 (Bankr.Fla.1981); *In re Romeo,* 16 B.R. 531, 535–37 (Bankr.D.N.J.1981); *In re Whitehurst,* 10 B.R. 229, 230 (Bankr.M.D.Fla.1981); *In re French,* 9 B.R. 464, 466–68 (Bankr.S.D.Calif.1981); *In re Wells,* 8 B.R. 189, 192–93 (Bankr. W.D.Ill.1981); *In re Knabe,* 8 B.R. 53, 56–57 (Bankr.S.D.Ind.1980); *In re Bell,* 5 B.R. 653, 654–55 (Bankr.W.D.Okla.1980); *In re Pelikant,* 5 B.R. 404, 406–08 (Bankr.N.D.Ill.1980); *Matter of Smith,* 3 B.R. 224, 231 (Bankr.E.D.Va.1980).

Seventh Circuit quoted *Merriman v. Hawbaker*, 5 F.Supp. 432 (E.D.Ill.1934) with approval, wherein Judge Lindley wrote as follows:

It is obvious, under the legal principles hereinbefore set forth and the statute quoted, that it was the intent of the Legislature that an order allowing to the plaintiff money for her solicitors' fees should be treated in exactly the same manner, stand upon the same footing, and have actually the same legal characterization and qualities as an allowance for money to buy food or groceries. All legislation in this respect springs out of the universally recognized duty of a husband to support his wife. The allowance to her for solicitors' fees is based upon the same under-lying thought as is an allowance to her to buy food, shelter, and clothing. It is enforceable by contempt. It is allowed to the wife and not to the counsel.... It is not a lien upon real estate unless so ordered by the court. It is in the nature of a fine or penalty assessed by the court in the enforcement of the husband's duty. It has obviously all the qualities of an allowance for support commonly termed "alimony." A judgment for alimony being nondischargeable, it follows that an order to pay the wife her solicitors' fees is likewise nondischargeable.

*Id.*

The Indiana Law relating to the dissolution of marriage at I.C. 31–1–11.5–16(a) provides as follows as to attorney fees:

Sec. 16(a) The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name.

Judge Kearns of the Southern District of Indiana in *Matter of Frey*, 13 B.R. 12,

*supra* summarized the Indiana law on the point as it relates to § 523(a)(5):

A court may award attorney fees in dissolution proceedings for legal services rendered prior to the commencement of the proceedings, during the proceedings and after the entry of judgment. I.C. 31–1–11.5–16. However, that power is not solely statutory, but rather an inherent equitable power of the courts. Where spouses have been ordered to pay attorney fees under this latter power, their obligation has been held based on the duty of support. *O'Connor v. O'Connor*, (1969) 253 Ind. 295, 253 N.E.2d 250; *State ex rel. Sims v. Hendricks Circuit Court*, (1956) 235 Ind. 444, 134 N.E.2d 211; *Brown v. Brown*, (1973) 157 Ind.App. 672, 301 N.E.2d 400.

"Legal fees incurred by the wife, whether in divorce or other contexts, are viewed under domestic relations law are necessities which the husband must provide under his duty of support." *In re Knabe*, 8 B.R. 53, 3 C.B.C.2d 634 (Bankr.S.D.Ind.1980).

Id. 13 B.R. at 14.

In addition, Judge Bayt of the Southern District of Indiana stated as follows in the case of *In re Knabe*, 8 B.R. 53 (Bankr. S.D.Ind.1980):

Before alimony was made nondischargeable by statute in 1903, bankruptcy case law had already ruled it to be so. The underlying theory was that since alimony is founded on the common law duty of the husband to support the wife, it was not a provable debt in bankruptcy. *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904); *Audubon v. Shufeldt, supra* 181 U.S. [575] at n. 8, 21 S.Ct. [735] at n. 8 [45 L.Ed. 1009 (1901)]; *Turner v. Turner*, 108 F. 785 (D.Ind. 1901). *Wetmore* also noted that the 1903 act merely restated existing law. It therefore follows that where an obligation is founded on the duty of support, it also will be nondischargeable under § 523(a)(5). The only modification the statute made of that duty was to make it reciprocal by substituting "wife" with the more neutral noun "spouse."

The effect of this rule on the fees in issue is to make them nondischargeable if Knabe had an obligation to support Paula by providing her with these funds. Legal fees incurred by the wife, whether in divorce or other contexts, are viewed under domestic relations law as necessities which the husband must provide under his duty of support. Clark, Law of Domestic Relations in the United States, § 6.3 at 190, § 14.2 at 428 (1968). While the Indiana courts have authority to award suit money and attorney's fees under Ind.Code § 31–1–11.5–16 (1976), that power is not solely statutory. It is an inherent power of those courts; where spouses have been ordered to pay attorney's fees under the latter power, their obligation has been held based on the duty of support.[12] *E.G. O'Connor v. O'Connor,* (1969) 253 Ind. 295, 302, 253 N.E.2d 250, 253–54; *State ex. rel. Sims v. Hendricks Circuit Court,* (1956) 235 Ind. 444, 446, 134 N.E.2d 211, 212; *Brown v. Brown,* (1973) 157 Ind.App. 672, 677, 301 N.E.2d 400, 403.

The court is of the view that this analysis makes eminent good sense. It is a frequent occurrence in divorce that one spouse cannot afford to hire an attorney out of his or her own resources. Such fees are a necessity for the indigent spouse in that court-supervised dissolution is the only legally recognized means of ending the martial relationship. The Marion County Superior Court has already made a determination as to Paula's need for support in the form of fees and the extent to which such support is required. The court therefore concludes that since the obligation to pay attorney's fees in a final divorce decree in Indiana is essentially based on the duty of support, such fees are nondischargeable under § 523(a)(5) of the Code. Knabe's paying the fees to Bennett directly benefits Paula and her children, in that Paula would otherwise have to pay those fees herself. Such an arrangement is permitted by Ind.Code § 31–1–11.5–16 (1976). *In re Cornish, supra* at Conclusion 2, 529 F.2d at 1363 remains the law of this circuit. [*Schiller v. Cornish, (In re Cornish)* 529 F.2d 1363 (7th Cir.1976) ]. *Accord, Jones v. Tyson, (In re Jones),* 518 F.2d 678 (9th Cir.1975); *Richter v. Pelikant, (In re Pelikant),* 5 B.R. 404, 6 B.C.D. 758 (Bkrtcy.N.D.Ill. 1980).

---

[12] Another related purpose of such grants is to provide the spouse in need with adequate means of prosecuting or defending the action, and thereby insure her a fair and impartial trial. This purpose was recognized under the predecessor to the current statute and is independently recognized in case law. *Welling v. Welling,* (1971) 257 Ind. 120, 132, 272 N.E.2d 598, 605; *State ex rel. Reger v. Superior Court of Madison County No. 2,* (1969) 242 Ind. 241, 244, 177 N.E.2d 908, 909; *Pry v. Pry,* (1947) 225 Ind. 458, 468, 75 N.E.2d 909, 914; 1873 Ind.Acts ch. 43, § 17, at 111, and 1939 Ind.Acts ch. 160, § 1, at 738, *current version* at Ind.Code § 31–1–11.5–16 (1976), reproduced *supra* n. 11, at 6. *Cf. Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (nonwaiver of filing fees for indigent women seeking divorce held to violate their Fourteenth Amendment procedural due process rights).

*Id.* 8 B.R. at 56–57. (Footnotes other than that of footnote 12 omitted).

However, Judge Rodibaugh of the Northern District of Indiana in the case of *In re Tackett,* 66 B.R. 77 (Bankr.N.D.Ind.1986), stated as follows:

> Previously this court has held attorney's fees for services rendered in a divorce proceeding can be in the nature of alimony for a spouse's support and maintenance and is thus nondischargeable under 11 U.S.C. § 523(a)(5); *Matter of Gilbert,* 10 B.R. 462, 462 (Bkrtcy.N.D.Ind. 1981); *see also, Matter of Frey,* 13 B.R. 12 (Bkrtcy.S.D.Ind.1981); *In re Knabe,* 8 B.R. 53 (Bkrtcy.S.D.Ind.1980). This court has also held such fees could be viewed as a debt arising under a property settlement agreement between ex-spouses, in which case the obligation could be dischargeable in bankruptcy. *Matter of Gilbert, supra,* 10 B.R. at 463.

The prior reasoning of this and other districts in Indiana utilized the common law duty of the husband to support the wife as a basis for the state court's inherent power to award attorney's fees. Where the award of fees is made by the state court under its inherent powers rather than by statutory authority it is held to be based on the duty of support. *In re Knabe, supra,* 8 B.R. at 56 *and cases cited therein.* Under current Indiana law, however, the state courts no longer have the inherent power to award spousal support, alimony, or maintenance. It is only under certain statutory guidelines that the state court may award support. Ind.Code 31–1–11.5–11(e); *Pfenninger v. Pfenninger,* 463 N.E.2d 1115, 1119 (Ind.App.1984); *Coster v. Coster,* 452 N.E.2d 397, 403 (Ind.App. 1983); *Steele v. Davisson, Davisson & Davisson,* 437 N.E.2d 491, 492 (Ind.App. 1982); *Hull v. Hull,* 436 N.E.2d 841, 843 (Ind.App.1982). Therefore, an award of attorney fees can no longer be logically said to derive from the court's inherent power to award spousal support (i.e., the state courts in Indiana no longer have such inherent power).

This is not to say the state courts no longer have the power to order the payments of the spouse's attorney fees or that such obligation is automatically dischargeable in bankruptcy. Rather, that is to say the award of such fees must necessarily be either by virtue of the state court's authority to award attorney's fees in a divorce action, Ind.Code 31–1–11.5–16, in which case the award would be dischargeable in bankruptcy since not based upon spousal support and thus not exempt under 11 U.S.C. § 523(a)(5) or, the award may be in the nature of spousal support if awarded under the statutory guidelines for such support, Ind.Code 31–1–11.5–9, 10, 11, and thus the award would be nondischargeable in bankruptcy.

*Id.* 66 B.R. at 78–79, (Footnotes omitted).

The Indiana Supreme Court in *State ex rel Paxton v. Porter Superior Court,* 467 N.E.2d 1205 (Ind.1984), held after direct reference to the court's discretion to award

fees under I.C. 31–1–11.5–16, that the power of the courts to order support for a wife pending divorce, and in allowance of her attorney fees and expenses associated with the maintaining of the divorce, are founded in the common law obligation of the husband to support the wife, *citing, O'Connor v. O'Connor,* 253 Ind. 295, 253 N.E.2d 250 (Ind.1969). *Id.* 467 N.E.2d at 1207. The Court also noted that such an award need not be related to the merits of the case, does not, strictly speaking, form a part of the decree or judgment, and need not be supported by conclusions of law or findings of fact. *Id.* 467 at 1207.

In the recent case of *Sovern v. Sovern,* 535 N.E.2d 563 (Ind.App. 4th Dist.1989), the Indiana Court of Appeals stated:

Under Ind.Code 31–1–11.5–16(a) (Supp. 1988), the trial court may award attorney fees at any stage of the dissolution proceeding including appellate fees. However, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such other factors as bear on the reasonableness of the award. *Barnett, supra.* [*Barnett v. Barnett,* 447 N.E.2d 1172 (Ind.App. 1983) ].

*Id.* 535 N.E.2d at 567.

This court concludes that the tests laid down by the courts in *Miskovsky v. Skinner,* 88 B.R. 360 (W.D.Okla.1987), and *In re Schiltz,* 97 B.R. 671 (Bankr.N.D.Ga. 1986) reflect the controlling factors as to when attorney fees are not dischargeable in bankruptcy as being in the nature of support under § 523(a)(5).

The *Miskovsky* court noted as follows:

The Court finds the more appropriate test for determining dischargeability of the instant debt is to determine whether the award of fees related to alimony, support or maintenance or to the settlement of property rights and thus, let the dischargeability of the debt "rise or fall with the primary debt." *In re Bell,* 5 B.R. 653, 655 (Bankr.W.D.Okla.1980). This was the test in this judicial district

prior to Judge Bohanon's decision in this case, *id.; e.g., In re Bonhomme*, 8 B.R. 645 (Bankr.W.D.Okla.1981), and such is the test applied in other jurisdictions. *E.G., In re Williams*, 703, F..2d 1055 (8th Cir.1983); *In re Spong*, 661 F.2d 6 (2d Cir.1981). These cases hold under federal bankruptcy law which can but be flavored by state domestic law, 5 B.R. at 655, that if the underlying debt is "in the nature of support" and nondischargeable under section 523(a)(5), the fee debt is likewise "in the nature of support" and nondischargeable.

88 B.R. at 361.

The *Schiltz* court stated as follows:

Generally, courts have held that an award of attorney's fees in connection with an alimony or child support decree are in the nature of alimony, maintenance, or support. *In re Williams*, 703 F.2d 1055 (8th Cir.1983); *Pauley v. Spong (In re Spong)*, 661 F.2d 6 (2d Cir.1981). The court in *Spong* recognized that such an award "may be essential to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law." 661 F.2d at 9. An attorney's fee award may also be held nondischargeable even if awarded in a post-divorce child custody proceeding. *Marks v. Catlow (In re Catlow)*, 663 F.2d 960 (9th Cir.1981) (construing Section 17(a)(7) of the former Bankruptcy Act, 11 U.S.C. Section 35(a)(7) (repealed 1979)). Such an award, however, must be sufficiently and directly related to a primary support obligation, which includes ancillary obligations awarded in response to those costs incurred in a proceeding to enforce the primary debt. *Long v. Long (In re Long)*, 39 B.R. 535 (Bankr.E.D.Ark.1984); *Matter of Coleman*, 37 B.R. 120, 123 (Bankr.W.D.Wis. 1984); *Cooley v. Sposa (In re Sposa)*, 31 B.R. 307 (Bankr.E.D.Va.1983).

Characterizing all family obligations as support may sweep too broadly and the general rule that exceptions to discharge should be narrowly construed must be figured into the equation to promote the "fresh start" policy in bankruptcy. *Compare Coleman*, 37 B.R. at 125; *Rose v. Gedeon (In re Gedeon)*, 31 B.R. 942, 944–45 (Bankr.D.Colo.1983). Given that both policies are important in the law, reasoned and principled distinctions should be made in examining this question. In *Gedeon*, the court found that the petitioner had been awarded attorney's fees "to put her on an equal footing to pursue the matter of custody and support." 31 B.R. at 945. Similarly, in *Seymour Ostrow, P.C. v. Schwartz, (In re Schwartz)*, 53 B.R. 407 (Bankr. S.D.N.Y.1985), the court determined that attorney's fees, awarded in a proceeding brought by the debtor nearly ten years following the original divorce decree to change visitation rights and maintenance and support payments, were nondischargeable. Without the award the state court concluded that the recipient spouse would have been unable to defend the suit. 53 B.R. at 411. *See Westmoreland, Patterson and Mossely v. Painter (In re Painter)*, 21 B.R. 846 (Bankr. M.D.Ga.1982) (without fee award, former spouse would have to pay law firm from funds needed to provide for necessities of life); *see also Hicks v. Hicks (In re Hicks)*, 65 B.R. 227, 14 B.C.D. 1226 (Bankr.D.N.M.1986) (fee and cost award held nondischargeable for expenses incurred by nondebtor parent in locating and recovering child abducted by debtor).

The present proceeding concerns a state court award of attorney's fees to a parent in connection with a proceeding subsequent to the original divorce decree for modification of custody rights. This Court recognizes that it is in the child's best interest to have all custody matters fully and fairly litigated, including post-divorce custody proceedings. The state court granted a custody modification. The Superior Court Order recites that both parents possessed comparable monthly income. Plaintiff is an attorney representing himself. This Court concludes that the only basis for finding that an award for attorney's fees in a state court divorce, post-divorce, or child custody proceeding is actually in the nature of support, is to determine whether

the award was intended to address a financial necessity of the nondebtor spouse to enable that person to sue or defend such an action. *See Pauley v. Spong, supra,* 661 F.2d at 9; *Marks v. Catlow, supra,* 663 F.2d 960; *Painter, supra,* 21 B.R. 846. A court must examine the need of the recipient spouse at the time of the award to properly determine whether the award was directly related to that spouse's ability and means to otherwise provide for himself or his family while contesting the domestic action.

97 B.R. at 673–74.

■ The fact that I.C. 31–1–11.5–16(a) authorizes the state court to award any such attorney's fees directly to the attorney for the ex-spouse of the debtor will have no impact on the Court's conclusion. The Court of Appeals for the Seventh Circuit in *In the Matter of Cornish,* 529 F.2d 1363, *supra* states as follows:

The bankrupt attempts to avoid the impact of the *Morrey [v. Morrey,* 24 Ill. App.3d 77, 320 N.E.2d 503 (1974)] and *Merriman* decisions by referring to a recent amendment to the Illinois Divorce Act. Section 16, Ill.Rev.Stat. C.40 § 16, was changed so as to authorize the divorce court to make the attorney fees payable either to the wife or directly to her attorney at the court's discretion. Despite the holdings in the above cases, the bankrupt argues that when the attorney fees are ordered payable directly to the attorney, this changes the nature of the obligation and that the award can no longer be considered alimony. We are not persuaded. Whether the fees are payable to the wife or to her attorney they more or less represent funds for the satisfaction of the wife's obligation to pay her lawyer and the rationale of the decision in *Merriman* therefore applies. The award is to her regardless of the method of payment. For similar holdings in other jurisdictions *see Jones v. Tyson,* No. 74–1464, 518 F.2d 678 (9th Cir., June 16, 1975); *Reeves v. Andersen,* 89 Idaho 512, 406 P.2d 812 (1965); *Allison v. Allison,* 150 Colo. 377, 372 P.2d

946 (1962). *Compare, Nichols v. Hensler, supra,* [528 F.2d 304, 309 (7th Cir. 1976)]. sl. op. p. 8.

*Id.*

The above holding by the *Cornish* court under the prior Bankruptcy Act has been adhered to by the Courts under the Bankruptcy Code. *See e.g., In re French,* 9 B.R. 464, 466–68 (Bankr.S.D.Cal.1981); *In re Knabe,* 8 B.R. at 55, *supra; Matter of Gwinn,* 20 B.R. 233, 235 (9th cir. B.A.P.1982); *Matter of O'Leary,* 20 B.R. 79, 80 (Bankr.E.D.Colo.1982); *In re Schroeder,* 25 B.R. 190, 191 (Bankr.N.D.Ill. 1982).

■ In addition, the attorney has standing to object to dischargeability. *In re Spong,* 661 F.2d at 10–11, *supra; In re Auer,* 22 B.R. 274, 275 (Bankr. E.D.N.Y.1982).

### E

*Federal Standards for Determining the Dischargeability of a Debt Pursuant to 11 U.S.C. § 523(a)(5)*

■ The Court will now consider the dischargeability of the attorney's fees awarded to the Plaintiff by the Defendant by the State Court. Under § 523(a)(5) of the Code, exceptions to discharge on the ground that an obligation is in the nature of alimony, maintenance, or support, are matters to be determined by Federal Bankruptcy law and not by state law. *Shaver v. Shaver,* 736 F.2d 1314 (9th Cir.1984); *In re Williams,* 703 F.2d 1055 (8th Cir.1983); *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983); *In re Mencer,* 50 B.R. 80 (Bankr.E.D.Ark. 1985); *In re Seidel,* 48 B.R. 371 (Bankr. C.D.Ill.1984). *See, Brown v. Felsen, supra.*

This court in *Hill v. Hale,* Slip op., Adversary Proceeding No. 89–6074 (*In re Hill,* Case No. 88–60075) (Bankr.N.D.Ind. June 5, 1989) analyzed the federal nature of the obligation to be determined under § 523(a)(5), rather than the characterization of the debt by the State Court pursuant to State Law. There the Court stated as follows:

11 U.S.C. § 523(a)(5) provides as follows:

(a) a Discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—. . . .

\* \* \* \* \* \*

(5) *to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child,* in connection with a separation agreement, divorce decree, or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, *but not to the extent that ...*

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; . . . . (emphasis added)

The legislative history of this particular section in the form of Legislative Statements indicates as follows:

Section 523(a)(5) is a compromise between the House bill and the Senate amendment. The provision excepts from discharge a debt owed to a spouse, former spouse or child of the debtor, in connection with a separation agreement, divorce decree, or property settlement agreement, for alimony to, maintenance for, or support of such spouse or child but not to the extent that the debt is assigned to another entity. If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement, property settlement agreement, or divorce proceeding, such debt is dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony, maintenance, or support of debtor's spouse, former spouse, or child. (124

Cong Rec H11096 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978)).

*Reprinted in* Norton Bankruptcy Law and Practice, Bankruptcy Code § 523, *Legislative History and Comment.*

The Notes of the Committee on the Judiciary, House Report No. 95–595 state as follows:

Paragraph (5) excepts from discharge debts to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of, the spouse or child. This language, in combination with the repeal of section 456(b) of the Social Security Act (43 U.S.C. 656(b) [former section 656(b) of Title 42, The Public Health and Welfare] by section 327 of the bill, will apply to make nondischargeable only alimony, maintenance, or support owed directly to a spouse or dependent. See, Hearings, pt 2, at 942. *What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law.* Thus, cases such as *In re Waller*, 494 F.2d 447 (6th Cir 1974); Hearings, pt 3, at 1308–10, are overruled, and the result in cases such as *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952) is followed. This provision will, however, make nondischargeable any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance, or support of the spouse as determined under bankruptcy law considerations that are similar to a consideration of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement. *See* Hearings, pt 3, at 1287–1290. (H.R.Rep. No. 95–595, 95th Cong, 1st Sess. 364 (1977)).

*Reprinted* in Norton Bankruptcy Law and Practice, Bankruptcy Code § 523, *Legislative History and Comment.* (emphasis added)

Norton Bankruptcy Law and Practice § 27.56 (Callaghan & Co. 1983), provides an informative discussion of the area of the dischargeability of family support,

and thus to put the matter in proper perspective, the Court will take the liberty of quoting from this treatise at length. Norton states as follows:

Throughout the history of United States bankruptcy law, family support organizations have been excepted from discharge. Prior to statutory enactment, nondischargeability was based on the theory that the obligation to support a spouse or child was not a debt and that only debts could be discharged. Thus the first statutory exception to discharge for family support obligations was "merely declaratory" of existing law.[1]

The current exception of spousal and child support is found in Code § 523(a)(5). The duty to support a present or former spouse or child is the principal interest protected by the section.[2] Whether a duty of support exists depends on state law;[3] whether an obligation based on that duty is nondischargeable depends on federal law.[4]

If both the duty to support and the relationship between that duty and the debt whose dischargeability is questioned are clear, few problems are presented. In practice, however, it is difficult to establish the relationship between the duty and the debt, because a debtor-creditor relationship can exist between spouses (or former spouses) for reasons other than support, and it is often uncertain whether the debt has a nondischargeable support base or some other dischargeable base.

The courts have taken different approaches in determining whether the obligation is based on the duty to support or not. The major federal court approach,[5] espoused by Judge Learned Hand, confines the inquiry to whether the obligation arose out of discharges, or in any way expresses, the duty of support. If that question is answered affirmatively, the form of obligation is disregarded and the obligation is excepted from discharge. The second approach,[6] followed by the majority of state courts, focuses on the form of the obligation, as well as on the intent of the parties or of the matrimonial court; occasionally courts following this approach also consider the dependent spouse's need for or use of the payment.

1. *Westmore [Wetmore] v. Markoe,* 196 U.S. 68, 49 L.Ed. 390, 25 S.Ct. 172 (1904).

2. Louiseaux, *Domestic Obligations in Bankruptcy,* 37 Journal Nat Assoc. Ref In Bank 68 at N 16 (July 1963).

The term "support" includes the somewhat archaic distinctions between alimony owed to a former spouse, maintenance owed to a former spouse, maintenance owed to a legally separate spouse, and support owed to a spouse or child.

3. Without a state-imposed duty to support another, any obligation purporting to be based on it is dischargeable. *See* § 27.57. Neither federal statute nor federal common law creates a duty to support another.

4. Application of federal discharge-ability standards is illustrated by cases based on Texas law which expressly forbids alimony or support awards to a divorced spouse. A duty that is sufficiently like the support duty has been found for federal dischargeability purposes. See § 27.58. *In re Warner,* 6 BCD 788, 5 BR 434 (BC D Utah, 1980).

5. *See* § 27.59. [*Citing, In re Adams,* 25 F.2d 640 (2d Cir.1928), where Judge Hand propounded the rule that the underlying duty and not the terms of the obligation controls dischargeability].

6. *See* § 27.60.

The Federal Courts have consistently held that in the context of a bankruptcy discharge, whether an obligation is in the nature of alimony, maintenance or support is a matter to be determined by federal bankruptcy law and not state law. *In re Harrell,* 754 F.2d 902 (11th Cir.1985); *In re Williams,* 703 F.2d 1055 (8th Cir.1983); *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984) (Held: although Indiana does not provide for alimony, the Bankruptcy Court was not bound by the treatment of the obligation in Indiana Courts); *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983); *Erspan v. Badgett,* 647 F.2d 550, 554–55 (5th Cir. 1981); *In re Mencer,* 50 B.R. 80, 83 (Bankr.E.D.Ariz.1985); *In re Seidel,* 48 B.R. 371, 373 (Bankr.C.D.Ill.1983).

The Court in *In re Harrell* correctly held as follows:

* * * * * *

First, the language of § 523(a)(5) does not refer to a particular state law legal duty of support. If Congress had intended dischargeability to be determined by whether an obligation could be imposed under state law, it might have addressed dischargeability in those terms. Congress chose instead to describe as not dischargeable those obligations in the "nature" of support. We believe that in using this general and abstract word, Congress did not intend bankruptcy courts to be bound by particular state law rules.

This conclusion is directly supported by the legislative history of § 523(a)(5). The committee reports that accompanied the new bankruptcy code provide that "what constitutes alimony, maintenance, or support will be determined under the bankruptcy laws, not state law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6319. We take this legislative history as another indication Congress did not intend dischargeability to be determined by reference to a state law legal duty of support.

Most circuit courts of appeal that have considered the question have likewise concluded that state law does not determine whether a domestic obligation is dischargeable in bankruptcy. In *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984), for example, the court considered the effect on dischargeability of a provision under Indiana law that allowed alimony only when a spouse was incapacitated or when the parties agreed in writing to an award of alimony. *Id.* at 1316 & n. 4. The court did not follow the state law but looked instead to the substance of the obligation in question to determine if it was one for support. *Id.* at 1316. The court concluded that the parties intended to provide support "and therefore ... the obligation was 'in the nature of alimony, maintenance, or support' under federal law." *Id.* at 1317. Having determined that the obligation was in the nature of support under federal

law, the court held that it was not dischargeable in bankruptcy. *Id.*

Similarly, in *Williams v. Williams (In re Williams)*, 703 F.2d 1055 (8th Cir.1983), the court observed that it was "not bound by the characterization of an award under state law." *Id.* at 1057. The court in *Williams* affirmed that a debtor's agreement to pay his wife's attorney's fees was "in the nature of support," even though under applicable state rules, the agreement would not be considered support. *Id.* at 1057. The court observed that "whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law." *Id.* at 1056.

The case we have considered that is most similar to the present case is *Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984), which the court considered a debtor's obligation to pay educational expenses. The court rejected debtor's argument that since he had no legal duty under state law to pay the expenses, his obligation was dischargeable. *Id.* at 683. The court found that the parties had intended their agreement to function as support, and that this conclusion was not altered by the fact that state law did not require the undertaking. *Id.*

We are of like opinion in the present case, that the nature of debtor's promise to pay educational expenses and child support is not determined by the legal age of majority under state law. The bankruptcy court characterized the agreement to pay educational expenses as in the nature of support, and the only ground on which debtor has challenged that characterization on appeal relates to the state law legal duty as determined by the age of majority. We are persuaded by the language of § 523(a)(5), the legislative history of that section, and the weight of the case law that the absence of a state law duty does not determine that an obligation is dischargeable in bankruptcy. Accordingly, we affirm the district

court's decision with respect to the nondischargeability of debtor's obligation to pay post-majority child support and educational expenses.

*Id.* at 904–905 (footnotes omitted).

*See, also, In re Yeates,* 807 F.2d 874 (10th Cir.1986), where the Court held that a debtor's obligation to a former spouse may be in the nature of support so as to be not dischargeable even though it would not qualify as alimony or support under applicable state law.

State law, however, should be looked to by the bankruptcy court as a criteria in indicating whether a given award is in the nature of or characterized as a property settlement and dischargeable or an award of support, alimony or maintenance and thus nondischargeable. *In re Yeates, supra; In re Seablom,* 45 B.R. 445 (Bankr.D.N.D.1984); *In re Kagan,* 42 B.R. 563 (Bankr.N.D.Ill.1984). Thus, the bankruptcy court need not ignore well developed state law principles of domestic relations in determining whether a particular obligation is in the nature of support. *In re Holland,* 48 B.R. 874 (Bankr.N.D.Tex.1984); *In re Vogt,* 14 B.R. 743 (Bankr.E.D.Va.1981). This is particularly true in light of the fact that there is no federal law of alimony and support, and all domestic relations law is of state origin. *Matter of Holt,* 40 B.R. 1009 (D.C.S.D.Ga.1984); *In re Bonhomme,* 8 B.R. 645 (Bankr.W.D.Okla. 1981).

Dischargeability must be determined by the substance of the liability rather than the form. *In re Spong,* 661 F.2d 6, 9 (2nd Cir.1981).

The label placed on an obligation by the parties or a court is not necessarily determinative of its character as nondischargeable alimony, maintenance and support. *Matter of Benich,* 811 F.2d 943 (5th Cir.1987); *In re Doyle,* 70 B.R. 106 (B.A.P. 9th Cir.1986); *Matter of Story,* 36 B.R. 546 (Bankr.M.D.Fla.1983). Although the label may be a factor to be considered it is not necessarily conclusive or dispositive and the test is the substance of the obligation and not the form

or title. *In re Cowley,* 35 B.R. 520 (Bankr.D.Kan.1983). Thus, the label may be helpful in ascertaining the parties' and the state court's intention. *In re Altavilla,* 40 B.R. 938 (Bankr.D.Mass. 1984). However, where necessary, a court must look beyond the language of the decree to the intent of the parties or the Court. *Shaver v. Shaver,* 736 F.2d at 1314, *supra; In re Yeates,* 807 F.2d at 878, *supra; In re Calhoun,* 715 F.2d at 1109, *supra; Melichar v. Ost,* 661 F.2d 300 (4th Cir.1981). Although the true intent of the parties rather than labels attached to an agreement or the application of state law controls, an examination of a written agreement is not precluded as persuasive evidence of intent. *Tilley v. Jessee,* 789 F.2d 1074 (4th Cir.1986). While the written agreement constitutes persuasive evidence of whether the debtor's obligation is a nondischargeable support obligation when the agreement is ambiguous the Court may look to extrinsic evidence to determine whether the debtor's obligation is nondischargeable. *In re Yeates,* 807 F.2d at 878, *supra.* The determination must be made by looking at the substance of the agreement "viewed in the crucible of the surrounding circumstances" *In re Crist,* 632 F.2d 1226, 1229 (5th Cir.1988). In the final analysis, a court must attempt to ascertain the parties' and the divorce court's intent in determining whether an obligation created in a divorce decree is dischargeable in bankruptcy. *In re Grimes,* 46 B.R. 84 (Bankr.D.Md.1985); *In re Bowers,* 43 B.R. 333 (Bankr. E.D.Pa.1984); *In re Pody,* 42 B.R. 570 (Bankr.N.D.Ala.1984); *Stamper v. Stamper,* 17 B.R. 216 (Bankr.S.D.Ohio 1982). In the context of a voluntarily executed marital agreement the proper test lies in whether the parties intended that the payment be for support rather then as a property settlement. *Matter of Long,* 794 F.2d 928 (4th Cir.1986).

*Id.,* at pp. 6–15.

■ The legislative history to § 523(a)(5) makes it clear that what constitutes alimony, maintenance, or support will be determined by the federal bankruptcy

laws, not state law. However, in the absence of a federal law of domestic relations, Congress could not have intended that federal courts were to formulate the federal bankruptcy law as to the nondischargeability of alimony, maintenance, or support in a vacuum, precluding all reference to the well-established domestic relations law of the states.

This court has had several occasions to discuss the effects of federal law on the dischargeability of a state court decree awarding which has been denominated as support, maintenance, or alimony by the state court. In *Canganelli v. Lake County Dept. of Public Welfare*, slip op. Adversary Proceeding No. 89–6179 (*In re Canganelli*, —— B.R. ——, Case No. 88–61110) (Bankr.N.D.Ind. Aug. 30, 1990), the court discussed some of the basic principles application to the consideration of a state court decree in a § 523(a)(5) nondischargeability proceeding and observed:

> The Courts have consistently held that in the context of a Bankruptcy Discharge, whether an obligation is in the nature of alimony, maintenance or support is a matter to be determined by Federal Bankruptcy Law and not by state law. *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984); *In re Williams*, 703 F.2d 1055 (8th Cir.1983); *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983); *In re Mencer*, 50 B.R. 80 (Bankr.E.D.Ark.1985); *In re Seidel*, 48 B.R. 371 (Bankr.C.D.Ill. 1984); *In re Yeates*, 44 B.R. 575 (D.C.D.Utah 1984) *aff'd.* 807 F.2d 874 (10th Cir.1986).

> State law, however, should be looked to by the Bankruptcy Court as a criteria in indicating whether a given award is in the nature of or characterized as a property settlement and dischargeable or an award of support, alimony or maintenance and thus nondischargeable. *In re Seablom*, 45 B.R. 445 (Bankr. D.N.D.1984); *In re Kagan*, 42 B.R. 563 (Bankr.N.D.Ill.1984). Thus, the Bankruptcy Court need not ignore well developed state law principles of domestic relations in determining whether a particular obligation is in the nature of support. *In re Holland*, 48 B.R. 874 (Bankr.

N.D.Tex.1984); *rev'd.* without opinion 691 F.2d 498 (4th Cir.1982). This is particularly true in light of the fact that there is no federal law of alimony and support and all domestic relations law is of state origin. *Matter of Holt*, 40 B.R. 1009 (S.D.Ga.1984); *In re Bonhomme*, 8 B.R. 645 (Bankr.W.D.Okla.1981).

The label placed on an obligation by the parties or the Court is not necessarily determinative of its character as nondischargeable alimony, maintenance and support. *Matter of Story*, 36 B.R. 546 (Bankr.M.D.Fla.1983). Although the label may be a factor to be considered it is not necessarily conclusive or dispositive and the test is the substance of the obligation and not the form or title. *In re Cowley*, 35 B.R. 520 (Bankr.D.Kan.1983). Thus, the label may be helpful in ascertaining the parties' and the state court's intention.

The Court would also note some basic legal principles that apply to adversary proceedings instituted by a creditor to have a debt determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

In keeping with the purpose of the Bankruptcy Code, exceptions to the general rule of dischargeability of debts are to be strictly construed in favor of the Debtor. *In re Marino*, 29 B.R. 797, *supra; In re Linn*, 38 B.R. 762 (B.A.P. 9th Cir.1984).

The exceptions to dischargeability must be narrowly construed against the creditor's objections, and confined to those plainly expressed in the Code. *In re Norman*, 25 B.R. 545 (Bankr.S.D.Cal. 1982).

This is done to effectuate the fresh start policies of the Bankruptcy Code. *In re Levitan*, 46 B.R. 380 (Bankr. E.D.N.Y.1985); *In re Nicolle [Nicoll]*, 42 B.R. 87 (Bankr.N.D.Ill.1984).

Although, the nondischargeability provision of the Bankruptcy Code has no provisions allocating the burden of proof brought under it, the creditor must establish that the debt is non-dischargeable. *In re Bowers*, 43 B.R. 333 (Bankr.

E.D.Pa.1984); *Matter of Reinstein*, 32 B.R. 885 (Bankr.E.D.N.Y.1983); *In re Paley*, 8 B.R. 466 (Bankr.E.D.N.Y.1981).

The creditor objecting to discharge of a debt in Bankruptcy bears a heavy burden of proof to establish that the debt is squarely within the statutory exceptions. *In re Marino*, 29 B.R. 797 at 799, *supra.*

*Id.* pp. 44–46, *quoting, Lake County Dept. of Public Welfare v. Burton*, slip. opinion, Adversary Proceeding No. 86–6177 (*In re Burton*, Case No. 86–60694) (Bankr. N.D.Ind.1988).

Recognizing the requirement of applying a federal standard in determining the nondischargeability of alleged alimony, maintenance and support debts, this court made additional observations concerning the appropriate factors to be considered by the Bankruptcy court in determining the nature of a marital debt in *McHenry v. McHenry, (In re McHenry)*, 131 B.R. 669 (Bankr.N.D.Ind.1989). In *McHenry*, the court wrote:

In *In re Singer*, 787 F.2d 1033 (6th Cir.1986), the Court set out certain factors it deemed relevant in determining the nature of the debt. These included the following:

(1) The relative earning abilities of the parties;

(2) The ages, and the physical and emotional conditions of the parties;

(3) The retirement benefits of the parties;

(4) The expectancies and inheritances of the parties;

(5) The duration of the marriage;

(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

(7) The standard of living of the parties established during the marriage;

(8) The relative extent of education of the parties;

(9) The relative assets and liabilities of the parties;

(10) The property brought to the marriage by either party;

(11) The contribution of a spouse as homemaker.

*Id.* at 1037.

Various other Courts have attempted to set non-exclusive laundry lists or checklists of factors for the Bankruptcy Court to consider in distinguishing between nondischargeable support, alimony, or maintenance, and a dischargeable obligation arising out of a division of property. *See e.g., In re Stone*, 79 B.R. 633 (Bankr.D.Md.1987). The *Stone* Court set out the following factors:

1. Whether there was an alimony award entered by the state court.

2. Whether there was a need for support at the time of the decree; whether the support award would have been inadequate absent the obligation in question.

3. The intention of the court to provide support.

4. Whether debtor's obligation terminates upon death or remarriage of the spouse or a certain age of the children or any other contingency such as a change in circumstances.

5. The age, health, work skills, and educational levels of the parties.

6. Whether the payments are made periodically over an extended period or in a lump sum.

7. The existence of a legal or moral "obligation" to pay alimony or support.

8. The express terms of the debt characterization under state law.

9. Whether the obligation is enforceable by contempt.

10. The duration of the marriage.

11. The financial resources of each spouse, including income from employment or elsewhere.

12. Whether the payment was fashioned in order to balance disparate incomes of the parties.

13. Whether the creditor spouse relinquished rights of support in payment of the obligation in question.

14. Whether there were minor children in the care of the creditor spouse.

15. The standard of living of the parties during their marriage.

16. The circumstances contributing to the estrangement of the parties.

17. Whether the debt is for a past or future obligation, any property division, or any allocation of debt between the parties.

18. Tax treatment of the payment by the debtor spouse.

*Id.* at 638. *See also, In re Grijalva,* 72 B.R. 334, 336 (S.D.W.Va.1987) (12 factors); *In re Anderson,* 62 B.R. 448, 454–455 (Bankr.D.Minn.1986) (10 factors); *In re Barnett,* 62 B.R. 661, 663 (Bankr.E.D.Mo.1981) (18 factors); *In re Seidel,* 48 B.R. 371, 373 (Bankr.C.D.Ill. 1984) (10 factors); *In re Pody,* 42 B.R. 570 (Bankr.N.D.Ala.1984) (6 factors); *In re Altavilla,* 40 B.R. 938 (Bankr.D.Mass. 1984) (7 factors).

The Court in *In re Goin,* 808 F.2d 1391, (10th Cir.1987), stated that several factors are pertinent to the Bankruptcy Court's determination of whether a debt is support. These are:

1. If the agreement fails to provide explicitly for spousal support, the Court may presume that the property settlement is intended for support if it appears under the circumstances that the spouse needs support;

2. When there are minor children and an imbalance of income, the payments are likely to be in the nature of support;

3. Support or maintenance is indicated when the payments are made directly to the recipient and are paid in installments over a substantial period of time; and

4. An obligation that terminates on remarriage or death is indicative of an agreement for support.

*Id.* at 1392–1393, *citing, Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir.1984).

\* \* \* \* \* \*

This adversary proceeding, as opposed to those litigated in *[Matter of] Woods,* [561 F.2d 27 (7th Cir.1977) ] *[Matter of] Coil,* [680 F.2d 1170 (7th Cir.1982) ] and *[In re] Maitlen,* [658 F.2d 466 (7th Cir.

1981) ] *supra,* does not involve an Agreement of the parties that was approved by the State Court and incorporated into the Dissolution Decree whereby the Court would be called upon to construe the intent of the parties to the Agreement as to whether nondischargeable spousal maintenance was intended or a dischargeable property settlement. Here, the Dissolution was litigated on the merits and the State Court entered its Decree. In addition, this proceeding does not involve a situation wherein the Debtor was ordered to hold harmless the ex-wife from a joint marital debt of the parties and to pay a third-party creditor. Rather, this proceeding requires a determination by this Court as to the basis or intention of the State Court as to the $4,000.00 awarded directly to the ex-wife in lieu of the Cadillac automobile. To make that an analysis this Court must look at the original basis or intent of the State Court in awarding the Plaintiff the Cadillac in the original decree as the $4,000.00 lump sum payment was subsequently ordered in lieu of the Cadillac.

Often the Bankruptcy Court must glean the Court's intent from a dissolution decree that is either ambiguous, or although may not necessarily be ambiguous within its four corners, and does clearly spell out the state law basis for obligations, rights and duties of the respective ex-spouses, did not contemplate a subsequent bankruptcy by one of the spouses which would necessitate the application of the federal standards of § 523(a)(5) to the decree.

Often in such a situation, the testimony of the non-debtor spouse as to reason for the creation of the debtor's obligation arising out of the state court dissolution decree will provide sufficient evidence for the Court to determine the basis of the state court's decree. *See, e.g., In re Brown,* 36 B.R. 103 (Bankr.D.Kan.1983); *In re MacDonald,* 69 B.R. 259 (Bankr. D.N.J.1986).

*Id.* pp. 17–26.

 The Court would also note that its ultimate conclusion will be based on the

state of affairs at the time that the Decree was entered by the State Court, and not the "present needs" of the Plaintiff or the financial wherewithal of the Defendant at the time of the trial of this Adversary Proceeding. The Bankruptcy Court has no authority to consider alleged changed circumstances of the ex-wife in determining dischargeability. *Forsdick v. Turgeon*, 812 F.2d 801 (2nd Cir.1987); *In re Jenkins*, 94 B.R. 355 (Bankr.E.D.Pa.1988); *Matter of Rowles*, 66 B.R. 628 (Bankr.N.D.Ohio 1986); *In re Fryman*, 67 B.R. 112 (Bankr. E.D.Wis.1986); *In re Neely*, 59 B.R. 189, 193 (Bankr.D.S.D.1986).

## F

### *Is the Defendant Collaterally Estopped in this Adversary Proceeding from Litigating Whether the Attorney's Fees are Nondischargeable as being in the Nature of Support pursuant to § 523(a)(5), when the Dissolution Decree Incorporated by Reference a Property Settlement Agreement Executed by the Defendant Expressly States that the Attorney's Fees in Questions are "As Further Support" to Defendant's Ex-spouse?*

The resolution of whether the subject attorney's fees are nondischargeable as being in the nature of support pursuant to § 523(a)(5), also requires an examination of the doctrines of *res judicata* and collateral estoppel as they are applicable in nondischargeability proceedings.

As to the preclusive effect of the State Court Decree in this Adversary Proceeding in the court is mindful of the observations made in *In re Diaz*, 120 B.R. 967, 972 (Bankr.N.D.Ind.1987). In this case, the court wrote:

The general principles of claim preclusion and issue preclusion and their purposes should be first noted. These doctrines serve a multitude of purposes. They encourage reliance upon judicial decisions by preventing inconsistent decisions; they conserve the resources of the Courts and the litigants; they promote comity between the state and federal courts; and, they ensure judicial finality. *See* Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy, First Installment*, 58 Amer.Bankr.L.R. 349, 351 (1984).

One frequently quoted definition of the basic Rule of Claim Preclusion is from the United States Supreme Court's opinion in *Commissioner v. Sunnen:* The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissable matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352 ... [24 L.Ed. 195 1876]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.
*Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

As opposed to claim preclusion, issue preclusion prevents litigation by parties to a previous action of issues that have been "actually and necessarily determined by a court of competent jurisdiction...." *Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1977). As the Supreme Court noted in *Southern Pacific Railroad Company v. United States:*

The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.

*Southern Pacific Railroad Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897).

The *Restatement (Second) of Judgments* defines issue preclusion in the following terms:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments,* § 27 (1982).

Thus, issue preclusion is more limited than claim preclusion as issue preclusion only applies to individual legal and factual issues and not to an entire cause of action.

In the context of prior state court judgments and their non-dischargeability in bankruptcy, the Supreme Court in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), has spoken as to claim preclusion or *res judicata,* and denied claim preclusion effect to state court judgments in bankruptcy dischargeability litigation. The issue in *Brown v. Felsen, supra,* was whether the bankruptcy court could consider evidence extrinsic to the judgment and record of a prior state court action to recover monies when determining whether an indebtedness previously reduced to judgment was dischargeable under 11 U.S.C. § 35 of the Act (now 11 U.S.C. § 523(a)(2)(A)). The State court suit was settled by stipulation, and neither the stipulation nor the judgment set out the cause of action upon which the bankrupt's liability was based. The creditor sought to establish that the debtor's judgment debt to him was nondischargeable since the debt was allegedly the product of fraud and malicious conversion. The Debtor-bankrupt argued that the prior state court proceeding did not result in a finding of fraud, and contended that *res judicata* barred relitigation of the nature of his debt. The Court held that the doctrine of *res judicata* does not prevent a bankruptcy court from going behind a state court judgment to determine whether a debt is nondischargeable. The Court held that Congress intended the bankruptcy court resolve these types of dischargeability issues, and that by limiting the application of claims preclusion, the bankruptcy court would weigh the evidence and make the final determination as to whether the debtor committed fraud or conversion. *Id.* 442 U.S. at 138, 99 S.Ct. at 2212.

The *Brown* Court stated that if *res judicata* were to apply it would force the consolidation of claims in the state court which would "undercut a statutory policy of resolving § 17 questions in bankruptcy court, and would force state courts to decide these questions at a stage when they are not directly in issue and neither party has a full incentive to litigate them." *Id.* 442 U.S. at 132, 99 S.Ct. at 2210. The *Brown* Court also made the following commentary on the 1970 Amendments to Section 17:

> If a state court should expressly rule on § 17 questions, then giving finality to those rulings would undercut Congress' intention to commit § 17 issues to the jurisdiction of the bankruptcy court. The 1970 Amendments eliminated post-bankruptcy state court collection suits as a means of resolving certain § 17 dischargeability questions. In those suits, creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of their assets. Congress' primary purpose was to stop that abuse. A secondary purpose, however, was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws, and to give those claims to the bankruptcy court so that it could develop expertise in handling them. By the express terms of the Constitution, bankruptcy law is federal law, U.S. Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the Amendment described the bankruptcy court's juris-

diction over these § 17 claims as "exclusive." S.Rep. No. 91–1173, p. 2 (1970). While Congress did not expressly confront the problem created by pre-bankruptcy state court adjudications, it would be inconsistent with the philosophy of the 1970 Amendments to adopt a policy of *res judicata* which takes these § 17 questions away from bankruptcy courts and forces them back into state courts. *See In re McMillan*, 579 F.2d 289, 293 (CA 3 1978); *In re Houtman*, 568 F.2d 651, 654 (CA 9 1978); *In re Pigge*, 539 F.2d [369] at 371 [ (CA 4 1976) ]; 1 D. Cowans, Bankruptcy Law and Practice § 253, p. 298 (1978). *Compare* 1A J. Moore, J. Mulder, & R. Oglebay, Collier on Bankruptcy, para. 17.16[6], p. 1650.1 n. 50 (14th ed. 1978) (1970 Act), with *id.*, para. 17.16[4], p. 1643 (prior state law).

*Id.* 442 U.S. at 135–137, 99 S.Ct. at 2211.

The Courts have consistently applied the holding in the *Brown* case in dischargeability proceedings under 11 U.S.C. § 523(c). *See e.g., Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980); *In re Goodman*, 25 B.R. 932 (Bankr. N.D.Ill.1982); *In re Spector*, 22 B.R. 226 (Bankr.N.D.N.Y.1982); *In re Dohm*, 19 B.R. 134 (Bankr.N.D.Ill.1982).

It should be noted that the *Brown* case did not involve the issue of whether issue preclusion or collateral estoppel effect should be given to a prior state court judgment by the bankruptcy court in the non-dischargeability context, but the Court indicated that collateral estoppel could be applicable, leaving the question open. As the Court stated:

This case concerns *res judicata* only, and not the narrower principle of collateral estoppel. Whereas *res judicata* forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions *actually and necessarily decided in a prior suit. Montana v. United States*, 440 U.S. 147, 153, 59 L.Ed.2d 210, 99 S.Ct. 970 [973] (1979); *Parklane Hosiery Co. v. Shore*, 439

U.S. 322, 326 n. 5, 58 L.Ed.2d 552, 99 S.Ct. 645 [649 n. 5] (1979); *Cromwell v. County of Sac*, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1876). *If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.* (Emphasis added).

*Brown v. Felsen*, 442 U.S. 139 n. 10, 99 S.Ct. 2213 n. 10, *supra*.

\*　　\*　　\*　　\*　　\*　　\*

In addition the Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, was implemented by 28 U.S.C. § 1738, the relevant portions of which provide as follows:

The ... judicial proceedings of any court of any state ... shall have the same full faith and credit in every court within the United States and its territories and possessions as they have by law or usage in the courts of such state.

The Supreme Court in examining the "full faith and credit clause" and 28 U.S.C. § 1738 has stated, "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgement was rendered". *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984). *See also, Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *McDonald v. West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

In *Marrese* the Court noted:

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings, "shall

have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the state in which judgment was rendered.

*Marrese v. Academy of Orthopaedic Surgeons,* 470 U.S. at 380, 105 S.Ct. 1327 at 1331–32, 84 L.Ed.2d 274.

However, the determination of state issue preclusion rules is a very difficult and complicated matter and as the Chief Justice in his concurring opinion in *Marrese,* stated:

> [N]o guidance is given as to how the District Court should proceed if it finds state law silent or indeterminate on the claim preclusion question. The Court's refusal to acknowledge this potential problem appears to stem from a belief that the jurisdictional competency requirement of *res judicata* doctrine will dispose of most cases like this.

*Id.* 470 U.S. at 388, 105 S.Ct. at 1336, 84 L.Ed.2d at 286.

The Supreme Court in *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 314 (1980), indicated that only a clear congressional intent contrary to 28 U.S.C. § 1738 will permit a federal court to deny the preclusive effect of a state court judgment. In *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 467, 102 S.Ct. at 1890, 72 L.Ed.2d at 271, the Supreme Court stated, "an exception to § 1738 will not be recognized unless a later statute contains an express or implied partial repeal ... Repeals by implication are not favored." The Court gave as an example of clear intent the federal habeas corpus statute, 28 U.S.C. § 2254. The Court in *Kremer* also stated, "§ 1738 does not allow federal courts to employ their own rules of *res judicata* in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept rules chosen by the state from which the judgment is taken". *Id.* 456

U.S. at 481, 102 S.Ct. at 1898, 72 L.Ed.2d at 280.

It appears however, that the general rules as set out above have been ignored by the federal courts in bankruptcy cases relating to the issue of nondischargeability and the effect of prior state litigation. "instead the bankruptcy courts have applied federally developed rules of issue preclusion often without acknowledgment of the customary practice," Ferrell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* First Installment, 58 Amer.Bankr.L.J. 349, 357 (1985).

The general test most frequently applied by the bankruptcy courts is found in *In re Ross,* 602 F.2d 604 5 B.C.D. 700 (3rd Cir.1979). *Ross* sets out a four point test before the doctrine of issue preclusion or collateral estoppel can bar the relitigation of a dischargeability issue. This test is as follows:

1. The issue sought to be precluded must be the same as that in the prior action;

2. The issue must have been actually litigated;

3. The issue must have been determined by a valid and final judgment; and

4. The determination must have been essential to the judgment.

*Id.* 602 F.2d at 608.

The Court in *Ross* held that the Bankruptcy court must carefully review the record in the prior case and hold a hearing at which the parties have an opportunity to present evidence to determine whether these standards have been met.

This test is similar to the one set out in *Restatement (Second) of Judgments,* § 27 (1982).

There are minor differences in this federal test among the various circuits, but the *Ross* criteria appears to be the most frequently utilized. *See e.g., Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); *In re Carothers,* 22 B.R. 114, 119 (Bankr. D.Minn.1982); *United States Life Title Ins. Co. v. Dohm,* 19 B.R. 134, 137 (N.D.Ill.1982); *In re Supple,* 14 B.R. 898, 899 (Bankr.D.Conn.1981). The most dif-

ficult part of the test is the "identity of issue" requirement, as the Court in *In re Supple* stated:

[a] bankruptcy court cannot give collateral estoppel effect to a prior state court adjudication if the issue before the bankruptcy court differs from the issue which was before the state court. The standards employed by the state court in reaching its decision must comport with federal standards. To insure such an identity of standards, a bankruptcy court must scrutinize the entire record of the state court proceedings.

*Id.* at 904.

It should also be noted that the party seeking to assert collateral estoppel has the burden of proving all the requisites for its application. *Spilman v. Harley*, 656 F.2d 224, 229, *supra; In re Spector*, 22 B.R. 226, 231 (Bankr.N.D.N.Y.1982). Any reasonable doubt as to what should be decided should be resolved against using it as estoppel. *Id.*

In the specific context of a nondischargeability proceeding in the bankruptcy court in order to give collateral estoppel effect to a prior state court judgment, the bankruptcy court must first determine if all of the elements of collateral estoppel as established by applicable state law have been met.

*Id.* 120 B.R. at 972–976. (Emphasis supplied).

Subsequent to this Court's decision in *In re Diaz*, the Supreme Court in *Grogan v. Garner;* — U.S. —, 111 S.Ct. 654, n. 11, 112 L.Ed.2d 755 (1991) stated as follows:

11. Our prior cases have suggested, but have not formally held, that the principles of collateral estoppel apply in bankruptcy proceedings under the current Bankruptcy Code. *See e.g., Kelly v. Robinson*, 479 U.S. 36, 48 n. 8, 107 S.Ct. 353, 360, n. 8, 93 L.Ed.2d 216 (1986); *Brown v. Felsen*, 442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10. *Cf. Heiser v. Woodruff*, 327 U.S. 726, 736, 66 S.Ct. 853, 857, 90 L.Ed. 970 (1946) (applying collateral estoppel under an earlier version of the bankruptcy laws). Virtually every court

of appeals has concluded that collateral estoppel is applicable in discharge exception proceedings. *See, In re Braen*, 900 F.2d 621, 630 (CA 3 1990); *Combs v. Richardson*, 838 F.2d 112, 115 (CA 4 1988); *Klingman v. Levinson*, 831 F.2d 1292, 1295 (CA 7 1987); *In re Shuler*, 722 F.2d 1253, 1256 (CA 5), *cert. denied sub nom. Harold V. Simpson & Co. v. Shuler*, 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *Goss v. Goss*, 722 F.2d 599, 604 (CA 10 1983); *Lovell v. Mixon*, 719 F.2d 1373, 1376 (CA 8 1983); *Spilman v. Harley*, 656 F.2d 224, 228 (CA 6 1981). *Cf. In re Rahm*, 641 F.2d 755, 757 (CA 9) (prior judgment establishes only a prima facie case of nondischargeability), *cert. denied sub nom. Gregg v. Rahm*, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981). *We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).*

*Id.* 111 S.Ct. at 658, n. 11 (Emphasis supplied).

■ Thus, in this Adversary Proceeding, the Court will look to the preclusion laws of the State of Indiana to determine the preclusive effect of the State Court Agreed Decree in this Adversary Proceeding as to the issues raised by the Plaintiff as to whether the attorney's fees denominated therein as support are nondischargeable under § 523(a)(5).

The Court again relies on *In re Diaz*, 120 B.R. 967, *supra*, where in ascertaining the elements necessary to apply the doctrine of collateral estoppel in the State of Indiana stated as follows:

As a matter of background, the Court would note that it was held in the case of *Hardesty v. Bolerjack*, 441 N.E.2d 243, 245 (Ind.App.1982), that the doctrine of *res judicata* is divided into two parts: The first is "claim preclusion" in which prior adjudication of the *same* cause of action acts as a complete bar to any subsequent claim, and the second is "issue preclusion", which is applied when a particular issue is adjudicated and then put into issue in a subsequent suit on a *different* cause of action. *See also,*

*Snodgrass v. Baize,* 405 N.E.2d 48, 51 (Ind.App.1980), *rehrg. den.* 409 N.E.2d 645; *Leal v. Krajewski,* 803 F.2d 332 (7th Cir.1986).

Collateral estoppel (hereinafter: "issue preclusion") or on "estoppel by verdict" as the doctrine is sometimes referred to in the State of Indiana, applies when a particular issue is adjudicated and then put into issue in a subsequent suit on a different cause of action between the parties or their privies; in such cases, former adjudication of the issue is held to bind the parties or their privies in subsequent litigation. (*Cf.* "Estoppel by judgment" as *res judicata* is sometimes referred to in Indiana). *Cox v. Indiana Subcontractors Ass'n., Inc.,* 441 N.E.2d 222 (Ind.App.1982); *Gorski v. Deering,* 465 N.E.2d 759, 761–762 (Ind.App. 4th Dist.1984). Where there was only one lawsuit, one trial, and one judgment, the doctrine of issue preclusion cannot apply. *Nation v. State,* 445 N.E.2d 565, 570 (Ind.App.1983).

The doctrine of issue preclusion precludes litigation of issues not causes of action. *In re Estate of Nye,* 157 Ind. App. 236, 299 N.E.2d 854, 863 *rehearing overruled,* 157 Ind.App. 236, 301 N.E.2d 786.

To establish issue preclusion by means of a prior judgment in Indiana the following elements must be shown:

1. A suit
2. A final judgment
3. Identity of subject matter
4. Identity of parties

*Burtrum v. Wheeler,* 440 N.E.2d 1147, 1150 (Ind.App. 2d Dist.1982).

Issue preclusion is allowed to prevent relitigation of any legal or factual issue that has been *actually litigated and determined* by a final judgment. *Frye v. United Steelworkers of America,* 767 F.2d 1216 (7th Cir.1985), *cert. den.* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461. For the purposes of application of issue preclusion, it is not the similarity between the types of litigation or actions involved, but between factual issues and their roles in the respective actions that is important.
*Id.*

In order for issue preclusion to apply the particular issue must have been adjudicated and put into issue in a *subsequent* suit on a *different cause of action* between the same parties or those in privity with them. *In re Marriage of Moser,* 469 N.E.2d 762, 765–766 (Ind.App. 1st Dist.1984); *Indiana University v. Indiana Bonding Sur. Co.,* 416 N.E.2d 1275, 1283 (Ind.App.1981); *State of Indiana Highway Commission v. Speidel,* 392 N.E.2d 1172, 1175 (Ind.App. 2d Dist.1979).

*Id.* 120 B.R. at 976–977.

In *In re Dunn,* 109 B.R. 865 (Bankr. N.D.Ind.1988), this Court stated:

It should be noted that the Indiana dissolution law expressly sanctions and encourages settlement agreements between spouses. It is provided at I.C. 31–1–11.5–10 as follows:

Sec. 10 Agreements. (a) *To promote the amicable settlements of disputes* that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, *the parties may agree in writing to provisions* for the maintenance of either of them, *the disposition of any property owned by either or both of them* and the custody and support of their children.

(b) In an action for dissolution of the marriage *the terms of the agreement if approved by the court shall be incorporated and merged into the decree and the parties ordered to perform them,* or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter.

(c) The disposition of property settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent. (Emphasis supplied).

It was held in *Flora v. Flora,* 166 Ind.App. 620, 337 N.E.2d 846, 851 (Ind. App. 1st Dist.1975), that the Indiana Dissolution Act expressly encourages settlement agreements without differentiating between agreements that are antenuptial and those that are postnuptial.

It also has been held that if the parties to a dissolution decree desire a continuing financial relationship, they may take advantage of the statutory provision for settlement agreements which can be more or less precisely drafted in order to establish and protect their interests. *In re Marriage of Owens,* 425 N.E.2d 222 (Ind.App. 1st Dist.1981).

In Indiana, the Dissolution of Marriage Act vests in the trial court exclusive jurisdiction over all aspects of the marital relationship, including questions of property rights, and while the dissolution law encourages a negotiated settlement, a property settlement agreement in itself, is not a legal instrument binding on the parties to a dissolution of marriage, no matter how formally executed, until it is approved by the court, and incorporated and merged into the decree and, hence, a settlement agreement that has not been incorporated and merged into the decree has no legal efficacy as the Dissolution Act provides the sole method of dividing the marital property in a dissolution proceeding by court order or decree. *Anderson v. Anderson,* 399 N.E.2d 391, 398 (Ind.2nd.Dist.App.1979); *McClure v. McClure,* 459 N.E.2d 398 (Ind.App.2nd Dist.1984) (Two-step process is required: an agreement by the parties and approval by the court); *Eddings v. Eddings,* 437 N.E.2d 493 (Ind.App.1st.Dist.1982). *Id.* 109 B.R. at 872.

The question is whether the Property Settlement Agreement entered into between the Defendant and his ex-spouse, which was approved by the State Court, and incorporated by reference into the Dissolution Decree, should have issue preclusive effect in this Adversary Proceeding, even though the Decree was in effect a consent decree, and the issue of whether the attorney's fees were in the nature of support was not *actually* litigated between the parties.

In addressing this issue, the Court of Appeals of the Seventh Circuit in the case of *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987), in construing the preclusive effect of a prior State Court consent decree in § 523(a)(4) nondischargeability proceeding stated as follows:

As stated by the district court and acknowledged by the parties, there are four requirements for collateral estoppel: 1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action. *See Teamsters Local 282 Pension Trust Fund v. Angelos,* 815 F.2d 452, 456 n. 3 (7th Cir.1987); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390, 392 (7th Cir.1986); *Ferrell v. Pierce,* 785 F.2d 1372, 1384–85 (7th Cir.1986).

To establish that a debt is nondischargeable under 11 U.S.C. § 523(a)(4), a creditor must establish that: 1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created. *See In re Interstate Agency, Inc.,* 760 F.2d 121, 124 (6th Cir.1985); *In re Johnson,* 691 F.2d 249, 251–52 (6th Cir.1982); 3 L. King, *Collier on Bankruptcy* § 523.14, at 523–93 to 523–97 (15th ed. 1987). The stipulations in the consent judgment clearly establish that the debt is nondischargeable under 11 U.S.C. § 523(a)(4). Paragraph 3 of the Agreed Judgment Order indicates that Ms. Klingman and Mr. Levinson entered into an express trust agreement. Paragraph 4 establishes that the judgment against Mr. Levinson resulted from misappropriation and defalcation and that Mr. Levinson was acting in a fiduciary capacity at the time that the trust assets were dissipated. See Agreed Judgment Order at 1–2; Appellant's Supp.App. at 4–5.

Because the consent agreement resolved the same issues that would be litigated in the bankruptcy case and because Mr. Levinson was fully represented during the state court proceeding, three of the four requirements for applying collateral estoppel clearly have been satisfied. The only remaining question is whether stipulations entered into as part of a consent judgment satisfy the requirement that the issue be "actually litigated." One bankruptcy court has stated, citing *Moore's Federal Practice,* that "collateral estoppel is inappropriate when the prior judgment was a consent judgment ... without any hearing or determination of the merits by the court itself." *In re Hunter,* 17 B.R. 523, 526 (W.D.Mo.1982). However, the full quotation from *Moore's Federal Practice* states that: "Justice, then, is probably better served if the principle of collateral estoppel does not apply to unlitigated issues underlying default or consent judgments, or to issues determined by the parties, *unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions.*" 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice,* ¶ 0.444[1], at 794 (2d ed. 1984) (emphasis added). As stated in *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530 (5th Cir.1978), if the parties to a consent decree "indicated clearly the intention that the decree to be entered shall not only terminate the litigation of claims but, also, determine finally certain issues, then their intention should be effectuated." *Id.* at 539; *see also, Yachts Am., Inc. v. United States,* 230 Ct.Cl. 26, 673 F.2d 356, 360–62, *cert. denied,* 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4443, at 382 (1981) ("Issue preclusion does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation.").

In the consent decree entered into in this case, the parties specifically provided that the debt owed to Ms. Klingman would "not be dischargeable in any bankruptcy or similar proceeding and that in any subsequent proceeding all of the allegations of the Complaint and findings of this Court may be taken as true and correct without further proof." Agreed Judgment Order at 2; Appellant's Supp. App. at 5. In this situation it is certainly reasonable to conclude that the parties understood the conclusive effect of their stipulation in a future bankruptcy proceeding. Consequently, the consent judgment should be given collateral estoppel effect. The bankruptcy court and the district court therefore properly applied the principle of collateral estoppel and correctly held that the appellant's debt was not dischargeable under 11 U.S.C. § 523(a)(4).

3. As the bankruptcy court properly noted, the stipulation that the debt owed to Ms. Klingman would "not be dischargeable in any bankruptcy or similar proceeding" did not constitute a waiver of Mr. Levinson's right to have a bankruptcy court determine the dischargeability of the debt. *See, In re Levinson,* 58 B.R. 831, 836–37 (Bankr.N.D.Ill.1986); Appellant's App. at 27–28. Generally, all debts are dischargeable in bankruptcy unless specifically excepted by a provision in the Bankruptcy Code. *See e.g., In re Cross,* 666 F.2d 873, 879 (5th Cir. Unit B 1982). For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy. However, a debtor may stipulate to the underlying facts that the bankruptcy court must examine to determine whether a debt is dischargeable.

*Id.* 831 F.2d at 1295–96. (Footnote 3 included). (Emphasis in original).

Next, the Court will examine the extent to which Indiana Courts give preclusive effect to consent decrees, agreed judgments and the like.

The Indiana Court of Appeals in *Hanover Logansport v. Robert E. Anderson,* 512 N.E.2d 465 (Ind.App. 3rd Dist 1987), had an occasion to review the preclusive effect of a consent judgment, and noted as follows:

6. Federal cases that hold or imply that a consent judgment possesses the same force with regard to *res judicata* and collateral estoppel as a judgment entered after a trial on the merits include: *United States v. Swift & Co.* (1932), 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; *Burgess v. Seligman* (1882), 107 U.S. (17 Otto) 20, 27 L.Ed. 359; *Interdynamics, Inc. v. Firma Wolf,* (3rd Cir.1981), 653 F.2d 93, *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631.

Federal cases which hold or imply that in entering a consent judgment, a court is merely exercising an administrative function by recording what has been agreed to between the parties and, therefore, has no preclusive effect include: *United States v. International Bldg. Co.,* (1953), 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182, *Fruehauf Trailer Co. v. Gilmore* (10th Cir.1948), 167 F.2d 324; *Lawlor v. National Screen Serv. Corp.* (3rd Cir.1954), 211 F.2d 934, *Rev'd.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (The Supreme Court expressly stated, however, that it was "in accord with the decision below" on this point. 349 U.S. at 327, 75 S.Ct. at 868).

State courts are also divided on this question. *Compare Accurate Answering Service, Inc. v. Answering Service, Inc.* (1965), Ky.App., 394 S.W.2d 765 (An action is terminated by an entry of an offer of judgment and the court has no power to permit the plaintiff to enter judgment on the offer and to continue the action for the recovery of the balance of the claim) with *Empire Oil & Ref. Co. v. Chapman* (1938), 182 Okla. 639, 79 P.2d 608 (Second part of plaintiff's claim not merged in a former consent judgment on the first part—"If [the parties] did not have that intention, and neither led the other to believe it was full settlement of all damages, why should the law impose it on them?" *Id.,* 79 P.2d at 610).

7. In Indiana, there are four cases which address the effect of a consent judgment. They are: *Lemmon v. Osborn* (1899), 153 Ind. 172, 54 N.E. 1058; *McNelis v. Wheeler* (1947), 225 Ind. 148, 73 N.E.2d 339; *State v. Huebner* (1952),

230 Ind. 461, 104 N.E.2d 385, *reh. denied;* and *Elder v. State Ex Rel. Dep't of Natural Resources* (1985), Ind.App., 482 N.E.2d 1383.

In *Lemmon,* the Court held that where a judgment is entered by agreement, the rights of the parties are as conclusively adjudicated as if the judgment had been rendered upon a trial of the cause. *Id.,* 54 N.E. at 1060. In that case, a prior judgment by agreement established the validity of certain mechanics' liens. In a subsequent suit, the plaintiff sought to have the liens declared invalid.

In *McNelis,* the Court held that a consent judgment is as binding and conclusive between the parties and their privies as if the suit had been an adversary one. *Id.,* 73 N.E.2d at 342. And, in defining a *final* judgment, the Court stated: "If the judgment settles and concludes the rights involved, and denies the parties means of further prosecuting or defending the action, it is final." *Id.,* 73 N.E.2d at 341. It then noted that this rule has also been stated as follows: "An adjudication once had between the parties bars and cuts off all future litigation, not only as to what was actually litigated and determined, but as to all matters that might have been litigated and determined in the action." *Id.* In *McNelis,* the defendant sought to attack the validity of a prior judgment by agreement.

In *Elder,* the Court stated that, once sanctioned by the court, a consent decree is an adjudication which has *res judicata* effect. *Id.* at 1389. Consequently, it is an unappealable final judgment. *Id.* There, the Court held that the consent decree in question was entitled to *res judicata* effect precluding relitigation of the same claim or cause of action: "as such, [it] fixed the tights and duties of the parties." *Id.* at 1390. In *Elder,* the plaintiffs sought to vacate a prior consent decree.

In *Huebner,* the Court held that a consent decree cannot be reviewed by appeal, *Id.,* 104 N.E.2d at 387, since it does not represent the judgment of the court. *Id.,* 104 N.E.2d at 388. Appellate courts

do not have the authority to determine whether or not the parties erred in making their agreement or giving their consent thereto. *Id.*

Admittedly, *Elder* refers to a consent judgment as a final judgment and *McNelis* states that a final judgment bars all future litigation, including all matters that might have been litigated in the prior action. But, in all of these cases, one of the parties was attempting to re-open the entire case and attack the validity of the prior consent judgment or decree. Here, Anderson does not attack the validity of its agreement with Hanover; Anderson seeks only to recover the balance of its claim.

512 N.E.2d at 469–70, nn. 6 and 7.

The *Hanover* Court went on to say:

A consent judgment has a dual aspect. It represents an agreement between the parties settling the underlying dispute and providing for the entry of judgment in a pending or contemplated action. *See* James, *Consent Judgments as Collateral Estoppel*, 108 U.Pa.L.Rev. 173, 175 (1959). It also represents the entry of such a judgment by a court—with all that this means in the way of committing the force of society to implement the judgment of its courts. *Id.*

\* \* \* \* \* \*

We note that T.R. 68 is intended to encourage settlements, discourage vexatious suits, and avoid protracted litigation. *See,* 12 Wright & Miller, *Federal Practice and Procedure*, § 3001. Therefore, the result we reach here should serve those purposes.

Because we agree that if all issues and claims must be negotiated and dealt with in a consent judgment or foregone forever, parties will be reluctant to enter into such agreements, we adopt the consent judgment-as-contract theory and hold that the preclusive effect of a consent judgment must be measured by the intent of the parties. However, it must be clear that *both* parties have agreed to reserve an issue or claim. *And,* it must be precisely stated what issues or claims are being reserved.

Therefore, in order to insure that both parties have agreed to reserve a claim or issue and that the reserved claim or issue is clearly apparent to both parties, we hold that (1) the reservation must be incorporated into the offer of judgment itself and (2) it must be an inherent part of the original complaint.

*Id.* 512 N.E.2d at 470–71.

Thus, it appears that the Indiana Courts will grant issue preclusive effect to a consent decree as the one before the court.

■■■ Of course, as noted by the Seventh Circuit in *Klingman v. Levinson,* 831 F.2d at 1295, n. 3, *supra,* the stipulation by the defendant that the attorney fees were in the nature of support as found at Clause 4.C.6 of the Property Settlement Agreement could not operate as a pre-bankruptcy waiver by the Defendant of his right to subsequently have the § 523(a)(5) issues decided in an Adversary Proceeding in the bankruptcy court arising out of a bankruptcy petition filed by the Defendant after the consent decree was approved by the state court.

In addition, unlike the Debtor in *Klingman v. Levinson,* 831 F.2d at 1296, *supra,* the Defendant did not expressly stipulate in the Property Settlement Agreement that the debt for attorney's fees would "not be dischargeable in bankruptcy, or similar proceeding, and that in any subsequent proceeding all of the allegations of the complaint and findings of this Court may be taken as true and correct without further proof", whereby the parties understood the conclusive effect of their stipulation in a subsequent bankruptcy proceeding.

■■■ Nevertheless, the Property Settlement Agreement was approved by a court decree, and as a Consent Decree it can be given collateral estoppel effect based on Indiana law in determining whether the debt for attorney's fees is nondischargeable as being in the nature of support, if this Court also applies to the Consent Decree the federal standards as to the *nature* of this debt as required by § 523(a)(5). That is, although the Defendant cannot contract away his right to discharge the

fees in a subsequent bankruptcy, the Defendant may stipulate the underlying facts that the Court must examine to determine if the fees are dischargeable.

Consistent with the judgment-as-contract theory adopted by the Court in *Hanover Logansport v. Robert Anderson*, 512 N.E.2d at 471, *supra*, the Indiana Court of Appeals in *Flynn v. Barker*, 450 N.E.2d 1008 (Ind.App. 3rd Dist.1983) held as follows:

> A judgment is construed in the same manner as a contract would be. The language of a judgment is ambiguous where it would lead two reasonable men to different conclusions as to its effect and meaning. *Ethyl Corp. v. Forcum–Lannom Associates* (1982), Ind.App., 433 N.E.2d 1214; *Indiana Industries, Inc. v. Wedge Products* (1982), Ind.App., 430 N.E.2d 419. When construing the language of a judgment the Court will attempt to read the provisions of the judgment so as to render all of them effective and not mere surplusage. *Evansville–Vanderburg Sch. Corp. v. Moll. et al.* (1976), 264 Ind. 356, 344 N.E.2d 831; *Woodruff v. Wilson Oil Co.* (1978), 178 Ind.App. 428, 382 N.E.2d 1009.

*Id.* 450 N.E.2d at 1009.

 Thus, the Court will apply the Indiana Rules of Contract Construction to

the Property Settlement Agreement executed by the Defendant and his ex-spouse which was incorporated into the Dissolution Decree.[2]

The Defendant has not raised any issues of lack of subject-matter jurisdiction, lack of jurisdiction over the person, or fraud or the like in the execution of the Property Settlement Agreement or the entry of the Decree whereby the underlying validity of the State Court Decree approving Property Settlement Agreement itself is subject to collateral attack as being void as opposed to voidable. *See*, I.L.E., *Judgment*, § 721. Thus, parol evidence is only admissible to explain the same if it is ambiguous as a matter of law.

 An examination of the language of the Property Settlement Agreement reveals that as a matter of law it is not ambiguous in that reasonable men cannot differ as to its interpretation. The language is clear and unequivocal as to the intent of the parties as to the nature of the attorney's fees to be paid by the Defendant. *See* Clause 4.C.2 and Clause 4.C.6, *supra*. The express language of these clauses indicate the clear intent of the parties, and in turn the Court that said fees should be characterized as in the nature of support. *See*, *Matter of Long*, 794 F.2d 928, 931 (4th Cir.1986). Thus, parol evi-

---

**2.** The Indiana Courts have held that where there is no ambiguity found in a contract, its construction is a matter of law for the Court. *Piskorowski v. Shell Oil Company*, 403 N.E.2d 838 (Ind.App.1980); *Wilson v. Kauffman*, 156 Ind. App. 307, 296 N.E.2d 432, 437 (1973).

The Court in *Piskorowski, supra*, at page 844, went on to say that a contract is ambiguous if reasonable men could find its terms susceptible to more than one interpretation, *citing, Tastee-Freez Leasing Corp. v. Milwid*, 173 Ind.App. 675, 365 N.E.2d 1388, 1390 (1977), and *Myers v. Maris*, 164 Ind.App. 34, 326 N.E.2d 577, 581 (1975). 403 N.E.2d at 844. The test as to ambiguity has also been said to be whether reasonably intelligent persons could reach different conclusions as to the meaning of an instrument. *Shahan v. Brinegar*, 181 Ind.App. 39, 390 N.E.2d 1036 (1st Dist.Ind.App.1979).

The *Piskorowski* court further held that if the intention of the parties can be gleaned from their written expression of it however, that intention must be effectuated by the court for that is the primary overriding purpose of contract law to ascertain and give affect to the intentions

of parties, *citing, Walb Construction Company v. Chipman*, 202 Ind. 434, 175 N.E. 132, 134 (1931), and *Fort Wayne Bank Bldg., Inc. v. Bank Building and Equipment Corp.*, 160 Ind.App. 26, 309 N.E.2d 464, 467 (3rd Dist.Ind.App.1974). 403 N.E.2d at 844.

Parol or extrinsic evidence is inadmissible to expand, vary, or explain an instrument unless there is a showing of fraud, mistake, ambiguity, illegality, duress, or undue influence. *Orme v. Estate of Kruwell*, 453 N.E.2d 355 (4th Dist.Ind. App.1983); *Stech v. Panel Mart, Inc.*, 434 N.E.2d 97 (3rd Dist.Ind.App.1982); *Hauck v. Second National Bank of Richmond*, 153 Ind.App. 245, 286 N.E.2d 852 (2nd Dist.Ind.App.1972).

If a written instrument appears to be complete on its face and executed, there is a conclusive presumption that it is the ultimate intent of the maker, and its terms and conditions may not be varied or changed by parol or extrinsic evidence and only fraud, mistake, and like matters going to the validity of execution may be considered if put in issue. *Lewis v. Burke*, 248 Ind. 297, 226 N.E.2d 332 (1967).

dence such as the affidavit of the Defendant in opposition to the Plaintiff's motion for summary judgment is not admissible to expand, vary, or explain the same.

In addition, the fact that the placement of the provision relating to attorney's fees is found in Clause 4 of the Property Settlement Agreement is relevant. It is noted that the Agreement that the Defendant pay said fees is found under Clause 4 which has a general heading of "Custody of the Child and Provision for Support and Maintenance", rather than in Clause 3, "Division of Property". As noted by the Seventh Circuit in the case of *In re Woods*, 561 F.2d 27, 3 B.C.D. 750 (7th Cir. 1977), the Court must attempt to effectuate the parties' on the Divorce Court's intent, and a factor that may be employed by the Court in determining whether an obligation memorialized in a divorce decree is dischargeable is whether the relevant clause is in the midst of provisions allocating property. *See also, Matter of Coil*, 680 F.2d 1170, 1171–72 (7th Cir.1982). Here, the relevant clause relating to fees is clearly placed in that clause relating to support rather than to the clause relating to the division of property.

Accordingly, the terms of the Property Settlement Agreement, which shall be given issue preclusive effect in this Adversary Proceeding, clearly indicate that the attorney's fees awarded to the Plaintiff are in the nature of support pursuant to § 523(a)(5) as determined by the federal standards discussed above. The Defendant cannot now at this late date in the face of such unambiguous language in the Property Settlement Agreement disavow the clear intention of the parties that the attorney's fees were considered to be in the nature of support.

The Court having reviewed the complaint and answer filed herein, and the Plaintiff's Motion for Summary Judgment together with the Supporting Memoranda, the Certified Copy of the Dissolution Decree, the Property Settlement Agreement, the Affidavit of Terri Hart, the Affidavit of the Defendant, and all of the relevant papers and documents of record, and having taken in to consideration all admitted facts, the Court finds that no genuine issue of material fact exists pursuant to Fed.R.Civ.P. 56(c), and that attorney fees awarded to the Plaintiff are a nondischargeable debt as being in the nature of support pursuant to § 523(a)(5), and that the Plaintiff is entitled to a summary judgment as a matter of law.

It is therefore

ORDERED, ADJUDGED, AND DECREED that the indebtedness of the Defendant to the Plaintiff in the sum of $2,545.49 together with accrued interest at the rate of 10% per annum from May 9, 1990, plus costs, is a nondischargeable debt in the Defendant's bankruptcy pursuant to 11 U.S.C. § 523(a)(5).

The Clerk shall set forth this judgment on a separate document pursuant to Bankr.R. 9021.